# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

AUG 11 2017

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. 4:17-mj-678 |
| Information associated with Facebook Account: | ) |
| Celina Hernandez | ) FILED UNDER SEAL |
| Account ID: celina.hernandez.96343 | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the _____Northern_____ District of _____Texas_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | | Offense Description |
|---|---|---|
| 18 U.S.C. § 1201 | Kidnapping | |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

John Korman Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/11/17

_____
*Judge's signature*

City and state:  Fort Worth, Texas          Jeffrey L. Cureton, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, John Kochan, a Special Agent with U.S. Immigration and Customs Enforcement
(ICE), Homeland Security Investigations (HSI), being first duly sworn, hereby depose
and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for
information associated with certain Facebook user IDs that are stored at premises owned,
maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking
company headquartered in Menlo Park, California.  The information to be searched is
described in the following paragraphs and in Attachment A.  This affidavit is made in
support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A)
and 2703(c)(1)(A) to require Facebook to disclose to the government records and other
information in its possession, pertaining to the subscriber or customer associated with the
user ID.

2.      I am a Special Agent with the Department of Homeland Security, ICE/HSI,
in Dallas, Texas, assigned to the North Texas Trafficking Task Force (NTTTF).  I have
been a criminal investigator for the past 7 years, with much of that time devoted to
investigating crimes such as transnational criminal gang activity, drug trafficking, child
exploitation, sex trafficking, and human trafficking.  Prior to being assigned to the
NTTTF, I was assigned to the Special Agent in Charge Baltimore, Maryland.  I have been
the lead investigator in various types of investigations ranging from homicide

**Affidavit in Support of Application for Search Warrant – Page 1**

investigations, kidnapping, child exploitation, human trafficking, and narcotics smuggling. I have received training from the Federal Law Enforcement Training Center (FLETC) and other law enforcement agencies in investigating smuggling, trafficking, and distribution of contraband and people in and out of the United States. I have been the Affiant for and have participated in the execution of numerous search and arrest warrants. I am in routine contact with experts in the field of computers, and computer forensics. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General of the United States to request a search warrant. As a law enforcement officer, I have used a variety of methods to investigate criminal activity, including, but not limited to, visual surveillance, witness interviews, the use of search warrants, confidential informants, and undercover agents.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Furthermore, based on my training and experience I am familiar with how human traffickers and other criminals utilize technology, including online social media such as Facebook to assist in the effective and efficient operation of their criminal activities, and to conceal those activities from law enforcement. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of the facts and circumstances known to me regarding this investigation.

**Affidavit in Support of Application for Search Warrant – Page 2**

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Kidnapping, in violation of 18 U.S.C. § 1201, has been committed by the users of the following Facebook accounts: **Celina Hernandez (Facebook Account ID: celina.hernandez.96343)** and that evidence of these crimes, as described in **Attachment B**, will be found on the Facebook.com accounts, described in **Attachment A**.

## PROBABLE CAUSE

5.      On or about May 8, 2017, your Affiant met with Detective J. Goodwin who is currently assigned to the Fort Worth (Texas) Police Department's Major Case/Human Trafficking Unit in reference to a kidnapping investigation in which Wendy Hernandez kidnapped a one-year-old child (hereafter referred to as John Doe 1 (JD1)) from Fort Worth, Texas.

6.      Detective Goodwin's investigation showed that on April 29, 2017, Hernandez took the child (JD1) of a family for whom she often served as a caretaker/babysitter from Fort Worth, Texas, and transported JD1 to North Little Rock, Arkansas without the permission of JD1's parents for the purpose of convincing her ex-boyfriend that JD1 was his son and re-establishing her relationship with her ex-boyfriend. During an interview, Hernandez stated that she had told her ex-boyfriend that JD1 was his son. Hernandez also stated that she concealed JD1's true identity and that she told her ex-boyfriend that JD1 was named after him. Hernandez's ex-boyfriend also confirmed

**Affidavit in Support of Application for Search Warrant – Page 3**

that over the course of their separation, Hernandez had been sending him photographs of JD1, whom he believed to be his son.

7.      On April 30, 2017, Hernandez and JD1 were located at the ex-boyfriend's residence in North Little Rock, Arkansas where JD1 was recovered. Hernandez was arrested and charged by the Fort Worth Police Department with Aggravated Kidnapping. Hernandez was held in the custody of the North Little Rock, Arkansas Police Department and was then extradited to Tarrant County, Texas.

8.      At the time of her arrest, Hernandez was found to be in possession of a black and gray Samsung Smartphone (Model SM-J327P, DEC 089 609 933 602 233 990, HEX 356 964 082 216 86), which was seized by the North Little Rock Police and subsequently turned over to the Fort Worth Police Department as evidence.

9.      On May 23, 2017, Detective Goodwin applied for and received a search warrant to conduct a forensic examination of the gray Samsung Smartphone seized from Hernandez by the North Little Rock Police Department. On May 24, 2017, Detective Goodwin submitted the gray Samsung Smartphone seized from Hernandez to the Fort Worth Police Digital Forensics Unit for examination.

10.     Your Affiant has reviewed the search warrant return for Hernandez's black and gray Samsung Smartphone and has observed that Hernandez used it as a means of accessing her Facebook social media account under the name **Celina Hernandez** (Facebook Account ID: **celina.hernandez.96343**).

**Affidavit in Support of Application for Search Warrant – Page 4**

11.    Your Affiant has observed that, contained within the Facebook Messenger chats on Hernandez's cellphone, are several chats with individuals involved in your Affiant's ongoing criminal investigation that your Affiant has identified as being pertinent to the facts and circumstances surrounding the Kidnapping of JD1. Specifically, your Affiant observed that on April 30, 2017, at 1920 hours, which is during the timeframe in which Hernandez is accused of kidnapping JD1, Hernandez received a text via the Facebook Messenger application from YVA (pseudonym) telling Hernandez that YVA received a phone call from Sylvia (a relative of Hernandez) asking YVA to contact Hernandez and tell her that Sylvia needed to speak with Hernandez urgently. Your Affiant observed that approximately one minute after receiving the message, Hernandez had a video chat through the Facebook app for an unknown period of time with YVA.  Furthermore, your Affiant has observed that Hernandez has numerous conversations with Jose Melkin Reyes (identified by investigators as Hernandez's ex-boyfriend in North Little Rock, Arkansas) dating back from March 26, 2017 through April 24, 2017.  Your Affiant has observed that the written content of several of these messages has been deleted from the phone, but that filenames of photographs that were sent by Hernandez are still documented in the messages themselves.  Through my training and experience, your Affiant knows that due to the limited storage available in cellphones, not all messages and photos will be shown or maintained within the Facebook app, but will likely be available in the account records maintained by Facebook Inc.

**Affidavit in Support of Application for Search Warrant – Page 5**

12.     Due to the limited storage capability of the Facebook Messenger application on Hernandez's cellphone, additional chats, photographs and messages that do not appear on Hernandez's cellphone will likely be documented and available in the records maintained by Facebook Inc.

13.     Your Affiant has viewed the publicly accessible Facebook account **Celina Hernandez** (Facebook Account ID: **celina.hernandez.96343**) and observed several photographs of a Hispanic female that your Affiant recognized as Wendy Hernandez.  In the publicly accessible area of her account, your Affiant also observed that Hernandez's Facebook account contains several photos of Hernandez with JD1.

14.     Your Affiant has issued a Preservation Request to Facebook, Inc. for Hernandez's account (**celina.hernandez.96343**) under Facebook case number 1210726.

## BACKGROUND REGARDING FACEBOOK

15.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

16.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail

**Affidavit in Support of Application for Search Warrant – Page 6**

addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

17.    Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

18.    Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

**Affidavit in Support of Application for Search Warrant – Page 7**

19.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

20.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

21.     Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's

**Affidavit in Support of Application for Search Warrant – Page 8**

"Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

22.      Facebook users can utilize an application contained within Facebook called "Messenger" in which the user can send messages to another Facebook user in a similar fashion to a text message. Facebook users can utilize the Messenger application from their cellphones or computers, and the messages will only appear under the Facebook application itself and is otherwise concealed from the view of law enforcement. The message itself will not appear on the user's cellphone unless the Facebook application itself is accessed.

23.      If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

24.      Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

**Affidavit in Support of Application for Search Warrant – Page 9**

25.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

26.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

27.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

28.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

29.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

30.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.

**Affidavit in Support of Application for Search Warrant – Page 10**

When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

31.     Some Facebook pages are affiliated with groups of users, rather than one individual user.  Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter.  Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

32.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

33.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of

**Affidavit in Support of Application for Search Warrant – Page 11**

the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

34.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

35.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For

**Affidavit in Support of Application for Search Warrant – Page 12**

example, profile contact information, private messaging logs, status updates, and tagged

photos (and the data associated with the foregoing, such as date and time) may be

evidence of who used or controlled the Facebook account at a relevant time. Further,

Facebook account activity can show how and when the account was accessed or used.

For example, as described herein, Facebook logs the Internet Protocol (IP) addresses

from which users access their accounts along with the time and date. By determining the

physical location associated with the logged IP addresses, investigators can understand

the chronological and geographic context of the account access and use relating to the

crime under investigation. Such information allows investigators to understand the

geographic and chronological context of Facebook access, use, and events relating to the

crime under investigation. Additionally, Facebook builds geo-location into some of its

services. Geo-location allows, for example, users to "tag" their location in posts and

Facebook "friends" to locate each other. This geographic and timeline information may

tend to either inculpate or exculpate the Facebook account owner. Last, Facebook

account activity may provide relevant insight into the Facebook account owner's state of

mind as it relates to the offense under investigation. For example, information on the

Facebook account may indicate the owner's motive and intent to commit a crime (e.g.,

information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting

account information in an effort to conceal evidence from law enforcement).

      36.     Therefore, the computers of Facebook are likely to contain all the material

described above, including stored electronic communications and information concerning

**Affidavit in Support of Application for Search Warrant – Page 13**

subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

37.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

38.     Based on the forgoing, I believe probable cause exists to believe that fruits, instrumentalities, contraband, and evidence of the violation of Kidnapping, in violation of 18 U.S.C. § 1201, as set forth in detail in Attachment B, will be found in Facebook account user **Celina Hernandez**, account ID **celina.hernandez.96343** at the subject premises described in Attachment A.

39.     Therefore, I request that the Court issue the proposed search warrant. Because the warrant will be served on Facebook, which will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

40.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). and "is in  a district in which the provider  is located or in which the wire or electronic communications, records, or other information are stored." 18 U.S.C. § 2711(3)(A)(ii).

41.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

#7547

John Kochan
Special Agent
U.S. Department of Homeland Security


Subscribed and sworn to before me on _____August 11_____, 2017

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

**Affidavit in Support of Application for Search Warrant – Page 15**

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook account user ID:

**Celina Hernandez**
**Account ID: celina.hernandez.96343**

that are stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

**Attachment A – Page 1**

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in **Attachment A**:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers, group identification number, a list of users currently registered to the group, and Group Contact Info, including all contact information for the creator and/or administrator of the group and a PDF of the current status of the group profile page.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)   All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)   All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)   All "check ins" and other location information;

(g)   All IP logs, including all records of the IP addresses that logged into the account;

(h)   All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)   All information about the Facebook pages that the account is or was a "fan" of;

(j)   All past and present lists of friends created by the account;

(k)   All records of Facebook searches performed by the account;

(l)   All information about the user's access and use of Facebook Marketplace;

(m)   The types of service utilized by the user;

**Attachment B – Page 2**

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitute fruits, evidence and instrumentalities of violations of 18 U.S.C. § 1201 for the user ID identified on **Attachment A**, information pertaining to the following matters:

(a) All email messages, instant messages, and attachments, including all temporary and permanent electronic files and records, which concern or relate to prostitution, commercial sex, recruiting for commercial sex, proceeds earned from commercial sex or any sexual activity for which a person can be charged with a criminal offense, or violations of 18 U.S.C. § 1201.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account

access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(e) The identity of the person(s) who communicated with the user ID's about matters relating to 18 U.S.C. § 1201; including records that help reveal their whereabouts.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Facebook, and my official title is _____. I am a custodian of records for Facebook. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c.      such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____
Date                                            Signature

**Certificate of Authenticity – Solo Page**